RALPH PLUMB

V.

ABNER TAYLOR ET AL.

*Sales—Dependent Agreements—Tender of Performance—Failure to
Make—Delivery to Trustee—Action to Recover Price—Renunciation—
Effect of—Receiver—Assignment.*

1. Where the agreements between contracting parties are mutual and
dependent, neither party without a tender of performance can demand per-
formance of the other. To maintain an action for the recovery of the pur-
chase price of an article agreed to be sold by such a contract, it is necessary
to aver and prove performance or tender of performance by the plaintiff.
Mere readiness to perform is insufficient to support the action.

2. In the case presented, it is *held:* That the delivery of the railroad

Plumb v. Taylor.

stock in question to a trustee in escrow, was not a tender to the defendant, nor a full performance on the part of the plaintiffs; that, upon the expiration of the trust, the defendant was under no obligation to take the necessary steps to procure possession from the trustee; that there was no such renunciation on the part of the defendant as to render a tender unnecessary, and that it does not appear that there was an assignment from the receiver of the firm of which certain of the plaintiffs were members.

3. Where there is a renunciation of a contract by one of the parties before the time for performance, the contract will remain in existence for the benefit, and at the risk of both parties, unless the other party accepts the renunciation and treats the contract as broken as soon as it is announced.

[Opinion filed September 18, 1888.]

In error to the Circuit Court of Cook County: the Hon. Richard S. Tuthill, Judge, presiding.

Suit in assumpsit by defendants in error against plaintiff in error. The declaration consists of two special counts, and the common counts for goods sold, money lent, etc. The special counts allege that by the terms of a contract dated October 10, 1878, it was agreed, among other things, that plaintiffs, Abner Taylor, Thomas Snell, James T. Snell and James Aiken, partners under the firm name of Snell, Taylor & Co., and Henry H. Porter, should assign to Plumb $700,000 in shares of stock of the Decatur & State Line Railway Company, and in consideration thereof, and of the work done and the money advanced by the plaintiffs in the construction of the road of said railway, so far as then constructed, the defendant promised the plaintiffs to pay them $42,600 on or before July 1, 1879, with interest after May 1, 1879, at seven per cent. per annum, in such manner and on such terms as thereafter might be agreed upon, and also that plaintiffs were to receive of townships along the line of road ten per cent. of certain bonds then expected by said parties to be issued in aid of the construction of said road; that plaintiffs should procure from the receiver of the firm of Snell, Taylor & Co., in pursuance of such order of court as might be necessary, all such assignments, transfers and confirmations as might be necessary to effectuate the performance of said contract, and that they should cause to be

delivered to defendant all the records, writings, books, maps and profiles, in any way pertaining to the description of said road. The special counts then allege that plaintiffs did then and there assign to defendant said $700,000 of stock; that at the time of making said contract, with the consent of defendant, plaintiffs transferred to Solon Humphreys the certificates of stock of said railway company, amounting to $700,000, who was to hold them as security for payment by defendant to plaintiffs of said sum of $42,600, and upon such payment to deliver said certificates to defendant; that plaintiffs did procure from the receiver of said partnership of Snell, Taylor & Co., all such assignments, transfers and confirmations as were necessary to fully effectuate the performance of said contract on their part; and that plaintiffs caused to be delivered to defendant all records, memoranda, writings, books, maps and profiles, in any way pertaining to the description of road, and immediately delivered said road to defendant; and that defendant has wholly failed to pay plaintiffs the said $42,600 or any part thereof. The defendant filed a verified plea of the general issue. The cause was tried by the court without a jury. Issue found for plaintiffs, damages assessed at $67,-938.83, to which defendant excepted. Motion for a new trial by defendant overruled and exception by defendant. Judgment for plaintiffs for $68,040.73, being amount of the finding and $101.90 for interest on the finding from date thereof to time judgment was entered. Defendant sued out this writ of error to reverse said judgment.

Messrs. Jno. N. Jewett and Jewett Brothers, for plaintiffs in error.

Messrs. B. C. Cook and Chas. H. Lawrence, for defendant in error.

Garnett, J. The agreement by appellees to assign the $700,000 of stock, and that by appellant to pay therefor $42,600, were mutual and dependent, and neither party, without a tender of performance, could demand performance of

the other. There is nothing in the contract to indicate that either party understood it otherwise. The courts are disposed to favor that construction of contracts of this description which makes the agreements dependent, and they are so considered, unless the contrary clearly appears. Bank of Columbia v. Hagner, 1 Pet. 465.

To maintain an action for the recovery of the purchase price of the article agreed to be sold by a contract of that kind, it is necessary to aver and prove performance or tender of performance by the plaintiff. Mere readiness to perform is not sufficient to support an action on the agreement. Bishop on Contracts, Sec. 1433; Lester v. Jewett, 11 N. Y. 453.

Counsel for appellees do not dispute the necessity of performance or tender of performance on the part of appellees, but they strive to meet this difficulty by two distinct answers. They first set up a contract made October 17, 1878, between the Wabash Railway Company, The Decatur & State Line Railway Company, Snell, Taylor & Co., Ralph Plumb and Solon Humphreys, trustee, in which it was agreed that certain contracts (not including that sued on in this case), and the certificate for said $700,000 of stock should be placed in the hands of Humphreys, to be held by him in trust until Plumb had, by sale of $1,080,000 bonds of the Decatur & State Line Railway Company or otherwise, paid to the trustee for Snell, Taylor & Co. the $42,600 mentioned in the contract sued on, or secured such payment to Thomas Snell, Abner Taylor and H. H. Porter for Snell, Taylor & Co., in such manner as they should, over their signature, indicate to the trustee, provided such payment be made or secured on or before May 1, 1879; that if such payment was so made or secured, said contracts to remain in full force, one copy of each to be delivered to each party executing the same, and the certificates of stock to be delivered by the trustee according to contract; but if this payment was not made or secured on or before May 1, 1879, the contracts deposited should be void, the trustee to cancel them and return to each party one of each, with his certificate of cancellation, and the certificates of stock to the order of Snell, Taylor & Co., and the trust to expire.

That contract was carried out to the extent of delivering to Humphreys the documents and certificates of stock specified, but Plumb failed to make any payment on or before May 1, 1879, and, in fact, has never paid any part of the $42,600 to Humphreys or to appellees. The certificates of stock remained in the hands of Humphreys until after May 1, 1879, but were never tendered to Plumb until this case was actually on trial, when they were produced and offered to him in open court. The appellees contend that the delivery to Humphreys was a full compliance with the contract on which this action is founded, because they thereby relinquished control of the stock, placing it in the power of Plumb to take it at any time on payment of the money, and that the " tender " (we surmise this to mean the placing of the certificates in Humphreys' possession,) was kept good by bringing the certificates into court and offering them to the defendant. But appellees did not, by putting the stock in escrow, lose anything more than the physical possession of the certificates. It was still in the possession of their trustee, and was of no more benefit to Plumb than it would have been in possession of Snell, Taylor & Co. He could then have taken it at any time on payment of the money, although no contract had ever been made with Humphreys. Then the argument is too swift in reaching the point where the tender is kept good, before any tender is made. The delivery to Humphreys was no tender to Plumb, and the record is barren of evidence of any other. The agreement of October 17th expired by its own terms May, 1, 1879. Appellees then had two months left in which to procure the certificates and offer them to appellant. The trustee could not, after that date, accept the $42,600 and deliver the stock to him. Any payment made by Plumb to Humphreys after that date would have been made at his peril. He was not obliged to apply to appellees for an order on Humphreys, while Humphreys could not deliver it without an order. The trust having expired and the stock remaining in the trustee's possession, there is no principle of law which imposed upon the purchaser the additional burden that would have been necessary to secure possession from Humphreys.

Plumb v. Taylor.

The second answer of defendants in error is that Plumb, in April or May, 1879, renounced the contract, and therefore they were not bound to make a tender. There was evidence to prove that Plumb did tell Taylor that he could not carry out the contract. Treating this statement as a renunciation, we have this simple change wrought in the relation of the parties, viz.: the defendants in error might have accepted it as a breach of the contract by Plumb, and brought suit for damages at once. Plumb's statement did not amount to a discharge of the contract, except at the election of the defendants in error. He could not elect for them, and thus confine their remedy to an action for damages for the breach. They might still insist on performance of the contract, and on tendering performance of their part, sue for the whole purchase money. In Anson on Contracts, pp. 271, 272, the author says: "It is now settled that a renunciation of a contract by one of the parties before the time for performance has come discharges the other *if he so chooses*, and entitles him at once to sue for a breach. * * * The promisee may therefore treat the contract as broken as soon as the promisor has announced his intention to break it; but if he will not accept the renunciation, but continues to insist upon the performance of the promise, the contract remains in existence for the benefit and at the risk of both parties."

No evidence was introduced tending to prove that defendants in error elected to treat the contract as broken by Plumb. They waited until after the time for performance elapsed, then brought this action for the purchase price, and the amount of the recovery was $42,600 and interest. The failure to make a tender of the certificates of stock is a fatal objection to the judgment.

In addition to what has been said, it may be added that no effort was made to prove any assignment, transfer or confirmation by the receiver of Snell, Taylor & Co. The agreement sued on admitted that there was then a receiver for that firm, and it must be presumed that no valid transfer could be made of any firm assets without action by the receiver and the court appointing him. This goes to the root of the title to such

interest in the stock as Snell, Taylor & Co. had, and no court can hold a purchaser liable for the price while that infirmity remains.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*