(80 Misc. Rep. 425.)

## PARKER v. WALLACE.

(Supreme Court, Trial Term, Cayuga County.　April, 1913.)

1. EVIDENCE (§ 89*)—PRESUMPTIONS—OFFICIAL ACTS—SPECIAL ASSESSMENT—
SERVICE OF NOTICE—PROOF.

In an action for conversion against an officer who enforced a special assessment against plaintiff's property, plaintiff's testimony that he had no recollection of receiving notice of the assessment was insufficient to overcome the presumption that the officials performed their duty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 111; Dec. Dig. § 89.*]

2. MUNICIPAL CORPORATIONS (§ 531*)—VOID ASSESSMENT—WARRANT AS PRO-
TECTION TO OFFICER.

In an action for conversion against an officer who has enforced a special assessment against plaintiff's property, it is no defense that he acted under a warrant, where the assessment was without legislative sanction or in violation of the Constitution.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1246; Dec. Dig. § 531.*]

3. MUNICIPAL CORPORATIONS (§ 993*)—CREATION OF INSIDE LIGHTING DIS-
TRICT—VALIDITY OF ASSESSMENT.

That the act of the city council in creating an inside lighting district results in hardships to certain property owners, or that there is some other and better way of carrying out the council's purpose, or that a large number of taxpayers are opposed to the creation of such district, will not, in the absence of fraud or other similar intent, invalidate a special assessment levied against a property owner for his proportion of the cost of the new lighting system.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

4. MUNICIPAL CORPORATIONS (§ 412*)—SPECIAL ASSESSMENT—POWER TO LEVY.

Under Charter of the City of Auburn (Laws 1910, c. 678) § 131, which empowers the council to create a lighting district "the cost of which shall be fixed and collected　*　*　*　as may be designated by the common council," the city is given ample authority to assess the cost against the property deemed by the council to be benefited thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1013; Dec. Dig. § 412.*]

5. MUNICIPAL CORPORATIONS (§ 406*)—SPECIAL ASSESSMENT—POWER TO LEVY.

Power to levy an assessment for a local improvement exists only when clearly and distinctly conferred by statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1001, 1002; Dec. Dig. § 406.*]

6. MUNICIPAL CORPORATIONS (§ 864*)—SPECIAL ASSESSMENTS—CONSTITUTION-
ALITY.

Charter of the City of Auburn (Laws 1910, c. 678) § 131, authorizing the council to create and alter lighting districts and install additional lights, is not violative of Const. art. 12, § 1, relative to the organization of cities and limitation of their taxing power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1828–1835; Dec. Dig. § 864.*]

7. CONSTITUTIONAL LAW (§ 48*)—CONSTRUCTION—CONSTITUTIONALITY.

A statute should, if possible under a fair view of the language used, be given such construction as will render it constitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48;* Statutes, Cent. Dig. § 56.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MUNICIPAL CORPORATIONS (§§ 266, 290*)—DUE PROCESS—SPECIAL ASSESS-
MENT.

Charter of the City of Auburn (Laws 1910, c. 678) § 131, authorizing
the creation and alteration of lighting districts and the installation of
additional lighting, is not invalid and does not authorize the taking of
property without due process of law because it fails to detail the methods
for the assessment and collection of a special assessment to meet the
cost; both the City Charter and Laws 1905, c. 352, providing in sufficient
detail relative to special assessments, and this section being merely an
extension of powers already vested in the common council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
712, 763, 764; Dec. Dig. §§ 266, 290.*]

Action by Amasa J. Parker against Richard Wallace for conversion.
Judgment for defendant.

Aiken & Messenger, of Albany, for plaintiff.
Charles T. Whelan, of Auburn, for defendant.

SAWYER, J. This is an action for conversion. Defendant con-
cedes that he seized and sold the property described in the complaint,
and pleads in justification a warrant for the collection of an unpaid
assessment against the property of plaintiff issued by the treasurer
of the city of Auburn. A jury was waived and the action tried by the
court.

The streets of the city of Auburn appear to have been for some
years lighted by electricity, and the cost thereof included in the general
tax budget of that city and collected in common with other taxes from
the various property holders upon the basis of the assessed valuation
of their respective properties.

By an amendment to the City Charter adopted in 1910, known as
section 131 (Laws of 1910, c. 678), its common council was "authorized
and empowered, in its discretion, to create and alter a lighting district
or districts within such city as it may fix and determine, with full pow-
er to order such construction and installation of lighting or additional
lighting as it may prescribe, the cost of which shall be fixed, appor-
tioned, assessed and collected in the manner and at the time as may
be designated by the common council."

Thereafter such proceedings were had by the common council as
resulted in the creation of an inside lighting district (so called) in said
city, comprising substantially the principal business portion of the
city, with provision for its lighting with 60-watt tungsten lamps
mounted upon ornamental standards about 10 feet in height, each lamp
enclosed in a translucent globe, and each standard surmounted by
five lamps; the system adopted being a modern equipment considerably
used in cities, particularly in the business sections thereof. The cost
of this new system was by the common council, after a public hearing
to all persons interested therein, pursuant to notice thereof duly given,
directed to be paid, as follows: Twenty-five per cent. thereof by the
city to be added to and included in the tax budget of each year, and
the remaining 75 per cent. by assessment upon the real property abut-
ting and fronting upon the streets in the inside district in propor-
tion to the frontage or number of lineal feet of the various properties

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

upon the streets; such assessment to be made and collected in the manner provided for in sections 7, 8, 9, and 10 of chapter 352 of the Laws of 1905.

The system of lighting so provided for the inside district was installed and put into operation, and in November, 1911, upon an assessment roll therefor, theretofore made, the common council, by resolution, levied against the property of this district according to its lineal frontage an assessment for 75 per cent. of the cost thereof and directed the giving of the notice and the collection thereof by the city treasurer, as specified in section 8 of said chapter 352 of the Laws of 1905.

In this proceeding an assessment was laid against certain property of plaintiff located within the boundaries of such district, for its proportion of the cost of such lighting system. This he refused to pay, and, upon such default, the treasurer of the city of Auburn issued to defendant, a constable in said city, a warrant for the collection thereof, and under the authority of that warrant defendant seeks to justify, as stated.

Assuming that this method of collection is lawful, the warrant itself, with its attached schedules, appears, upon its face, to be in the form and to contain the requirements prescribed by law and is sufficient, providing the assessment was authorized, based upon constitutional sanction and legally made, to protect defendant from personal liability for his actions done under its command. Norris v. Jones, 81 Hun, 304, 27 N. Y. Supp. 209, 30 N. Y. Supp. 1134; National Bank of Chemung v. City of Elmira, 53 N. Y. 49; United Lines T. Co. v. Grant, 137 N. Y. 7–10, 32 N. E. 1005.

Plaintiff urges that the notice prescribed in the act of 1905 was not given and that certain property located within the new district was omitted from the roll, and hence his became subject to more than its true share of the total assessment.

[1] As to both these claimed irregularities of procedure I think there is not sufficient proof. The presumption is that the officials performed their duty (D. H. Co. v. Buffalo, 39 App. Div. 333, 56 N. Y. Supp. 976), and plaintiff's testimony, that he has no recollection of having received the notice in question, is not sufficient basis for a finding that the notice was not given.

As to the omission of taxable property from the roll, the only witness called to establish the fact professed lack of knowledge of the boundaries of the district, and whether, with one exception, the property which he specifies is within or without its boundaries, does not appear. The city hall property is, however, within the district, and, as I understand the testimony, is located in the rear of a park having lineal frontage upon the street. The evidence seems to indicate that the property is separate from the park, but whether it also fronts upon a street, and, if so, whether its entire lineal frontage is not made the subject of assessment, does not appear at all certain.

The case must be disposed of upon the question as to the right of the common council to erect the inside district and adopt the method followed for payment of its cost.

[2, 3] If this action was without legislative sanction, or if such sanc-tion was prohibited by constitutional limitation, the assessment is null and void, and the warrant is no protection to defendant. That the action of the common council results in hardship for certain property owners, or that some other and better way of carrying their intent into execution is possible, or that a large number of taxpayers, or even all of them, are opposed to the creation of an inner lighting district with its additional cost, in the absence of fraud or similar wrongful intent, affords no ground for judicial interference at the suit of a taxpayer. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471.

The same principle governs here, and no matter howsoever applica-ble, as a criticism, may be the language of Chief Justice Church in Guest v. City of Brooklyn, 69 N. Y. 516, to which my attention is called, its force ends, nevertheless, in criticism.

[4] It is, however, insisted by plaintiff that the amendment to the Charter (section 131, supra) contains no provision for local assess-ment; that its general language, that the cost "shall be fixed, appor-tioned, assessed and collected in the manner and at the time as may be designated by the common council," contemplates only payment of that cost by general taxation upon the entire property of the city; that if the statute be construed to authorize the assessment of such cost, or even a part of it, upon the property in the district created under its permission, it is then counter to article 12, § 1, of the state Constitu-tion, which reads, that:

"It shall be the duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assess-ment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessment and in contracting debt by such municipal cor-porations."

[5] The power to levy an assessment for a local improvement exists only where it is clearly and distinctly conferred by legislative author-ity, and, if not so conferred, the assessment is void. If there is any necessity to resort to construction at all, it must be in favor of the property owner rather than against him. Nehasane Park Ass'n v. Lloyd, 167 N. Y. 431–436, 60 N. E. 741.

This proposition advanced by the plaintiff has been followed by the courts so uniformly that it may well be said to be unassailable. City of Watertown v. Fairbanks, 65 N. Y. 588; Matter of Second Ave. Church, 66 N. Y. 395; Stebbins v. Kay, 123 N. Y. 31, 25 N. E. 207; May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064.

That this section 131 contains plain and ample authority for the assessment of the cost against the property deemed by the common council to be benefited thereby seems patent, and is supported by an analysis of its phraseology had in the light of then existing conditions and the object of its enactment.

It distinctly empowers the common council in its discretion to create and alter a lighting district within such city as it may fix and deter-mine, with full power to order such construction and installation of lighting as it may prescribe.

The common council had already provided for the lighting of all the streets of the city, and it had full and complete power to alter the method of lighting in any portion of the city to such system and with such equipment as it deemed proper.

It could have, at pleasure, provided for the lighting of the streets included in this so-called inner district with the ornamental and claimed improved equipment and method, discontinued in those streets the use of the ordinary arc lamps theretofore installed, and levied and collected the cost thereof in the usual manner upon the taxable property of the city.

That the amendment in question was intended by the Legislature to accomplish some object, and not simply to repeat and duplicate a power already vested in the common council, is axiomatic. A new and separate district was authorized. Why? What power that the common council did not already have was intended to be conferred by such authorization? None other can be seen than the power to provide that the special benefit to such district might be charged against it, and collected from the property in proportion to the several benefits deemed to accrue thereto.

This view is confirmed by the second clause of the enactment, "the cost of which shall be fixed, apportioned, assessed and collected in the manner and at the time as may be designated by the common council."

The well-understood rules of statutory construction require force to be given to all parts of the section, and if this clause means that the cost of lighting the inside district is to be fixed, apportioned, and assessed upon all taxable property in the city, and collected by general taxation, the entire clause is nugatory, for the law already provided for general taxation and the method and time of its collection, which method and time could not be altered at the convenience of the common council.

When the general charter authority already existent is considered, the only purpose of this assessment must have been to provide for the cost of installation and maintenance of all, or some part, of these lights, upon the property within the district; the apportionment to be made upon that property and between it and the city at large in proportion to benefits derived as determined by the common council.

[6] If this section 131 was within the power of the Legislature to enact, it contains full and ample warrant to the common council to impose the cost of this benefit, or a part thereof, as a local assessment upon the property of the designated inside district. The suggestion that it is a violation of article 12, § 1, appears likewise to be untenable.

The section is an amendment to, and forms a part of, the Charter of the City of Auburn (Laws of 1906, c. 185). The discretionary powers therein conferred are not unbridled and unrestricted; they can be only exercised in connection with the general laws governing the operation of the city, and I think it cannot be fairly said, as argued by counsel, that, unless it is to be construed as requiring the cost of the inner lighting district to be assessed upon the property of the city as a whole, the entire cost could thereunder be imposed upon one individual, or one piece of property.

The Legislature has enacted two methods of taxation for municipal purposes which may be followed in Auburn; that specifically provided for the paving of streets (Laws of 1905, c. 352); and that provided for other general purposes (Laws of 1906, c. 185).

The general scheme of the amendment under consideration contemplates the erection of a lighting district, or districts, separate from that of the city as a whole, and embodies the assumption that, if the powers were exercised, it would be upon the belief of the common council that, to some extent, property in the district set apart would be particularly benefited by its action. The statute is erected upon the principle of direct benefit to property which is the foundation principle of that governing the paving of streets. Therefore the Legislature, considering both the charter and the paving act, seems by the optional power conferred to have intended that the common council might, and might only, apportion, assess, and collect the necessary moneys in the manner provided for in either, or both, these statutes, as in its judgment the facts should equitably warrant.

Should it be held, however, that the discretionary power so vested is not thus limited, it still seems not competent for the court to adjudge this act a violation of the constitutional provision under consideration.

Our Court of Appeals has held that section 1 of article 12 of the Constitution was intended only as a rule to operate upon the conscience and judgment of the Legislature in passing laws, and that legislative action must be assumed to have been had in view of the constitutional requirement; that the judgment of the lawmaking body is not be be reviewed or reversed in a court of law. Bank of Rome v. Village of Rome, 18 N. Y. 38–42.

[7] It is true that the Legislature has now been deprived of the power to enact such a law as was there under consideration; but I am unable, after a somewhat careful examination, to find that the limitation upon the power of the courts to set aside laws claimed to be in conflict with this section of the Constitution has been abrogated or modified. Possibly, a law giving to a municipality absolutely unrestricted powers of taxation or assessment might be subject to judicial revocation; but the presumption is always in favor of constitutionality, and, where an act can be fairly construed to be within the constitutional powers, it cannot be disturbed.

[8] It is urged, also, that the omission in this section to provide in detail the methods which might be adopted by the common council for the assessment and collection of the cost of this inner lighting district renders it void in that it constitutes the taking of property without due process of law, and falls within Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289, and the long line of cases which have since been adjudicated by our Court of Appeals in affirmance of the same principle.

To my mind a clear distinction exists between the situation here presented and those which have been, from time to time, under the scrutiny of the court. All the cases to which my attention is directed were decided in consideration of acts which commanded the assessment of property without making provision for notice to the property

owner and affording him opportunity to present his grievance and protect his interest as he might deem needful, or else were cases where assessments had been had under permissive laws providing for notice but the notice had not been given.

This act in no manner commands the exercise of the authority therein conferred. It is simply an extension of certain powers theretofore vested in the common council, and, as above stated, action could only be had under it in conformity with the requirements of the laws governing the city.

Both the charter and the act of 1905 provide, in detail, for due and timely notice to property holders, and comply fully with the constitutional requirements in that regard.

In other words, instead of directly legislating an inner lighting district or districts in the city of Auburn into being, the Legislature empowered, as it properly might do, the city council to adopt local legislation for its own concerns; availing itself of the authority thus conferred, and in strict compliance with the general limitations imposed upon it the common council by its resolution erected this district, providing in such resolution for notice to all interested persons in the same manner as had been theretofore by the Legislature specifically provided for the assessment and collection of other of the city expenditures. Laws of 1905, c. 352, § 7.

It cannot in my judgment be said that this notice was voluntary, or given purely as a favor to the taxpayers. It was a legal requirement and has been obeyed by the common council, and the assessments finally imposed in conformity therewith do not constitute a taking of property without due process of law. No fault in the legality of plaintiff's individual assessment is shown for it is established that he had such notice (supra).

The plaintiff, likewise, submits that the issuing by the treasurer of a warrant for the collection of an unpaid tax is authorized only in case of nonpayment of general city taxes, and cannot be resorted to for the collection of an assessment imposed upon the authority of the new section 131, and the resolution of the common council in furtherance thereof.

I do not agree with this contention, but have not considered same at length herein, for the reason that it was stated both upon the trial and in the brief of counsel that the action was instituted in behalf of the property owners of the inner district for the purpose of testing the validity of the new section 131 and the acts of the common council thereunder, and this question is not important to the object sought to be attained.

From the foregoing it follows that defendant is not personally liable for his acts done under command of the treasurer's warrant, and is entitled to judgment with costs.

Judgment for defendant, with costs.