Henry C. MAYHEW, Appellant,

v.

Kenneth H. VANWAY et al., Appellees.

No. 14186.

Court of Civil Appeals of Texas.

Houston.

Oct. 3, 1963.

Eastham, Meyer & Moore, Thomas W. Moore, Jr., Geo. D. Neal, Houston, for appellant.

James E. Winborn, M. G. Byerly, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellant against appellees, Kenneth H. Vanway, for exemplary damages, and Reveille Woods Christian Church, a corporation, to recover damages for alleged breach of a contract of employment entered into by and between appellant and the Church on February 5, 1958, wherein the Church employed appellant as minister for the term of seven years from and beginning the 21st day of July, 1957. From a "take nothing" judgment entered by the court, without the intervention of a jury, appellant has duly appealed.. Appellant's brief states that the parties agreed in chambers to limit appellant's cause of action to the recovery of damages for breach of contract by the Church.

The contract, after providing for the remuneration to be paid appellant, and other matters not pertinent hereto, provides three ways in which the Church might terminate the same under the following paragraphs thereof:

"7. If the Minister shall at any time be incapacitated by illness, or otherwise be kept from performing his duties as Minister for three consecutive calendar months, the official board may upon ninety days' written notice to the Minister terminate this contract; further, the Minister may terminate this agreement by giving three calendar months' notice in writing to the Official Board of the Church.

\* \* \* \* \* \*

"9. The said parties to this contract reserve the right, with mutual CONSENT to amend this contract as shall be agreed on. This contract may be dissolved by the mutual consent of both parties hereto.

\* \* \* \* \* \*

"11. It is further agreed that this contract can be declared null and void by a majority vote of the active Church members two (2) years from effective date."

The Church undertook to annul and void the contract by a majority vote of the active members thereof on or about July 16,

1961, which was approximately four years from and after the effective date of the contract, the discharge to be effective as of October 13, 1961.

The matter before this Court for determination is the construction of paragraph 11 of said contract. Appellant contends that such provision must be construed to mean that the Church may declare the contract null and void by a majority vote of the active members at the expiration of two years from the effective date of the contract and not thereafter. The trial court, by not allowing any damages whatever, though some were proved, evidently decided as a matter of law that the provision in question gave the Church the right to declare the contract null and void at any time after the expiration of two years from the effective date.

■ The contract is for seven years beginning July 21, 1957, which admittedly is its effective date. Under paragraph 7 of the contract the Church is protected in the event the minister becomes incapacitated by illness or is otherwise kept from performing his duties as minister for three consecutive calendar months. The additional provision contained in paragraph 11 of the contract gives the Church the right to declare the contract null and void, without any reason whatsoever for doing so, two years from its effective date. Two years from the effective date of the contract was July 21, 1959. This provision in effect gives the Church an option which it could exercise two years from the effective date of the contract. Failure to exercise such option at the time specified or, according to some authorities, within a reasonable time thereafter, would permit the contract to continue in force for the remainder of the seven year term subject to termination under the other provisions of the contract. The option to terminate the contract is in the nature of a forfeiture and should be strictly construed. Fred Mosher Grain v. Kansas Co-op. Wheat Marketing Ass'n (1932), 136 Kan. 269, 15 P.2d 421.

It is elementary that this Court cannot write a contract for the parties. If it had been intended by them that the contract could be declared null and void at any time from and after the expiration of two years from the effective date, it would have been a simple matter to so provide. This the parties did not do. They stipulated that two years from the effective date, July 21, 1957, the Church could declare the contract null and void. No reason is assigned for agreeing to the option which was for the benefit of the Church and which gave the Church the privilege of terminating the seven year contract two years from its effective date.

While we have not found or been cited to any authority directly in point, there are numerous authorities which support appellant's contention. In Farmers & Mechanics National Bank v. Central Guaranty Co., Tex.Civ.App.1922, 241 S.W. 600, the San Antonio Court of Civil Appeals held that where the parties entered into a five year contract for a subscription to a bank directory which provided that the subscription began July 1, 1916 and ended July 1, 1921, and reserved to the subscriber the privilege to cancel "at the end of the first year," any attempt to cancel the contract on July 9, 1917, which was some eight days after the end of the first year, was too late. The court said: "The parties must be held bound as they bound themselves."

The Superior Court of Pennsylvania, in Central Guaranty Co. v. Union National Bank, 92 Pa.Super. 70, which cites Farmers & Mechanics National Bank v. Central Guaranty Co., supra, held that where a five year contract for a subscription to a bank directory, which provided that the "subscription commences 7–1–22" and "subscription ends 7–1–27" and also provided that it was subject to cancellation "at the end of the first year," an attempt to cancel the contract on July 11, 1923, being more than one year after the effective date of the contract, was too late. See also Railway Advertising Co. v. Posner, 35 Misc. 285, 71 N.Y.S. 742.

In Central Guarantee Co. v. Fourth & Central Trust Company, 244 Ill.App. 61, at page 65, the court said:

> "The phrase 'at the end of' or 'at the expiration of' does not always necessarily imply that action must take place on the day of expiration in order to be a literal compliance with the contract. The word 'at' is not invariably used to denote a fixed and definite time. It sometimes may be used to mean 'about' or 'after.'"

The court held that the holder of the option to terminate could cancel within "a reasonable time" after the cancellation date. The court further said:

> "When one undertakes to pay a note or do a certain thing 'at' a certain definite date, the word undoubtedly means on the date named and not afterwards; but in the present circumstances where it made no difference to plaintiff whether defendant exercised the right of cancellation on or before December 31, 1920, or in March, 1921, we hold the cancellation to be within the provisions of the contract. We would have a different question to determine had plaintiff not received payment for the directory for 1921."

In Feree v. Moquin-Offerman-Hessenbuttel Coal Co., 29 Misc. 624, 61 N.Y.S. 120, the court held, where an advertising purchase contract provided that it "may be discontinued in three months," that it could not be discontinued or terminated the fourth month. The court, among other things, stated:

> "To support that (Defendant's contention) would unwarrantably invest 'in' with the meaning 'at any time after,' for the notice of discontinuance was admittedly not sent until the fourth month. The appellant, adopting the definition 'at the expiration of,' unreasonably extends it by adding, in effect, the word 'and at all times thereafter,' so as to carry the option through the remaining nine months of the contract."

In the instant case the appellee is undertaking to extend the option or privilege which it had the right to exercise two years from the effective date of the contract, or on July 21, 1959, through the remaining five years of the contract. There seems to be no real difference in the language "two years from its effective date" and the phrase "at the end of the first two years." Had this latter language been used, this case would come squarely within the holding of Farmers & Mechanics National Bank v. Central Guaranty Co., supra, and similar cases.

■ It is our view that the option in question had to be exercised by the appellee two years from the effective date or, in any event, within a reasonable time thereafter, and that such option does not extend through the entire remaining five years of the life of the contract. The provision, being in the nature of a forfeiture, should be strictly construed. It is not necessary for us to determine whether the option had to be exercised immediately at the end of the two year period or within a reasonable time thereafter, since in the instant case the Church did not undertake to exercise such option until approximately four years from and after the effective date of the contract. We hold, as a matter of law, that the attempted exercise of the option nearly two years after the expiration of the two years from the effective date of the contract, was not within a reasonable time.

In Bennett's, Inc. v. Krogh, 1946, 115 Colo. 18, 168 P.2d 554, 164 A.L.R. 1010, the contract in question granted the privilege of collecting garbage from the plaintiff's cafeteria for a term of five years, but reserved to the plaintiff the option of cancelling the contract at the end of six months upon giving thirty days notice. The court held that notice and attempted cancellation after a delay of fourteen months beyond the time provided in the contract was, as a matter of law, not within a reasonable time,

even under a construction of the contract which would authorize cancellation within a reasonable time after the termination. See Annotations under Bennett's, Inc. v. Krogh, 164 A.L.R. 1010, in which numerous cases are cited in which it was held that an option to cancel must be exercised at a time specified in the contract, and also cases in which it was held that the option may be exercised within a reasonable time after the time specified in the contract. See also Central Guarantee Co. v. National Bank of Tacoma, 1925, 137 Wash. 24, 241 P. 285, 45 A.L.R. 721; 17A C.J.S. Contracts § 402, p. 489.

We quote the following statement from Corbin on Contracts, 1950, Vol. 6, p. 65, Sec. 1266:

"A provision that a party may terminate the contract by giving notice at the end of a six months trial differs from one that empowers termination at any time after six months; in the former case it is clear that the power is limited to a reasonable time after the six months and this time would usually be so short as to be no more than would be included by the word 'promptly.' "

We mention, by way of analogy, that an option to terminate a lease must be exercised within the time permitted by the terms thereof or within a reasonable time thereafter. 32 Amer.Jur., p. 709, Landlord and Tenant, Sec. 832. Also, time is of the essence of the contract providing for the giving of notice of rejection of a purchase, and the purchaser loses his right to return the goods if he fails to give notice in time. 46 Amer.Jur., p. 659, Sales, Sec. 497.

The contract in question was for seven years, beginning July 21, 1957. But for the wrongful cancellation of the contract, it would have continued in force to July 21, 1964. This suit was filed March 28, 1960, and the trial began October 15, 1962. There is evidence in the record that appellant made, from the date October 13, 1961, when the alleged termination of the contract was to become effective, down to the time of trial, the sum of $65.00 and no more. There is evidence, which is not altogether clear, to the effect that in August or September, 1962, or some later date, appellant saw Mr. Bailey, the secretary of the Gulf Coast Christian Churches, and applied for a regular pastorate in some church, and none was available. The evidence also shows that appellant was advised that Mr. Bailey had a number of calls for interim pastorates. The evidence is insufficient to show that appellant made any effort to obtain employment in any of such interim pastorates and it is difficult to ascertain from the record just what diligence appellant exercised to obtain employment. There is nothing in the record to the effect that appellant would not be able to obtain employment from the date the case went to trial to the time the contract would expire but for the wrongful termination thereof. The contract provides for a fixed salary payable to appellant in the sum of $4,380.00 annually and also for a $75.00 monthly parsonage allowance. It further provides for an allowance of automobile expense of $50.00 per month, which expense appellant did not incur because of his discharge. It further provides that the Church will maintain membership in the Disciples of Christ Pension Fund, and shall keep the membership account therein current and paid up, but there is nothing to show what appellant lost with respect thereto as a result of his discharge.

■ In our opinion appellant established that he sustained some loss, but he failed to develop the full amount of damages that he might possibly have been entitled to recover. The case has not been fully developed. In the event of another trial, any future amounts recovered as salary should be discounted to their present worth. See Dixie Glass Co. v. Pollak, Tex.Civ.App., 341 S.W. 2d 530, writ ref., n. r. e.

Reversed and remanded.